## CONSTITUTIONALITY OF THE COUNTY DEPOSITORY ACT.

[Common Pleas Court of Summit County.]

THE STATE OF OHIO, EX REL ALVIN D. ALEXANDER, v. L. H.
OVIATT, EVER HAWKINS AND PHILIP WAGONER, AS COMMIS-
SIONERS OF SUMMIT COUNTY, OHIO, AND FRED E. SMITH, AS
TREASURER OF SUMMIT COUNTY, OHIO.*

Decided, September 17, 1906.

*Constitutional Law—Discrimination Against Persons and in Favor of
Corporations—Uniform Operation—Corporate Banks Preferred
Over Private Banks—When a Bank is "Situated" in the County—
"Inalienable Rights" and "Equal Protection of the Laws"—Relate
to Private, Personal, Civil or Political Rights of Natural Persons
Only.*

1. The Ohio act providing for county depositories (98 O. L., 274) is not
   in contravention of Sections 1 or 2 of Article I of the state Con-
   stitution, or of the Fourteenth Amendment of the Constitution of
   the United States, by reason of the fact that it discriminates
   against natural persons and in favor of banks and trust com-
   panies.
2. Nor does this act fail of uniform operation throughout the state by
   reason of the provision that in counties where there are located
   banks or trust companies incorporated under the laws of the state
   of Ohio or of the United States, such banks only shall be regarded as
   eligible to bid for and receive the county funds, but in counties
   where there are no such banks located, private banks may be
   awarded these funds.
3. The Cleveland Trust Company, having its situs for taxation, execu-
   tive management and business administration in Cuyahoga county,
   can not by reason of the fact that it maintains a branch bank in
   Summit county be regarded as "situated" in Summit county within
   the meaning of this act, nor is the manifest purpose of the act to
   keep the public funds of a particular county within the natural and
   usual channels of trade in that county, subserved by an award of
   these funds to a bank situated in another part of the state.

WANAMAKER, J.

On the 25th day of July, 1906, the relator filed his petition
in the court of common pleas averring for his cause of action,
that he was a resident and tax-payer of Summit county, Ohio,

---

*Affirmed, *State, ex rel*, v. *Oviatt et al*, 8 C. C.—N. S., 567,

and that on the 23d day of July, 1906, the said commissioners of Summit county, pretending to act in pursuance of law, awarded to the Cleveland Trust Company, of Cleveland, Ohio, a corporation, the use of the money of said county for the period of three years, said award having been made by said commissioners in pursuance of an advertisement duly made inviting sealed proposals from banks and trust companies for the payment to said county of interest for the use of the money in said county; that in answer to said advertisement the said the Cleveland Trust Company bid for the use of said money for said period of three years at the rate of 3.32 per cent. per annum, being the highest bid made; that in further answer to such advertisement, a large number of incorporated banks and banking institutions, located in Summit county, bid for the use of such money a rate of more than two per cent. per annum, said banks so located in Summit county and so bidding as aforesaid being more than sufficient in number to use all of the money of said county coming into the hands of the county treasurer from time to time.

Said relator further says, that said the Cleveland Trust Company, is a corporation of the state of Ohio; with its office, location, residence and principal place of business in the city of Cleveland, Cuyahoga county, Ohio, and that it is not competent and eligible to bid for the use of said funds when there are the required number of incorporated banks and trust companies located and doing business in Summit county, Ohio, which bid two per cent. or more for the use of said funds.

Said relator further says that the said commissioners are about to enter into a contract with the Cleveland Trust Company for the use of said county money, and will, unless restrained by this court, accept and approve an undertaking on the part of said trust company for said moneys to the amount of four hundred thousand dollars.

Said relator further says that the act of the General Assembly, under which said commissioners have pretended to act, was unconstitutional and void, in that the said act discriminates in favor of incorporated companies and trust companies as against natural persons and unincorporated banks, trust com-

panies, and banking institutions; that the said act and award and proposed contract and order of the said county commissioners, and the said contemplated act and delivery of money by said county treasurer are illegal and void, for the reason that the said the Cleveland Trust Company is not a resident or situated in Summit county, Ohio, and that the said commissioners are unauthorized and unwarranted in making any award to said trust company, or entering into any contract with it in reference to and trust companies situated in Summit county, Ohio, that have bid for the use of said money, to use, consume and cover all of the said county money.

The relator further says, that the necessary notice, in writing, was served upon the prosecuting attorney of said Summit county to institute this action for the purpose of preventing and restraining said county commissioners from awarding the funds to said the Cleveland Trust Company, and to restrain and prevent said treasurer from paying over and delivering to said the Cleveland Trust Company said moneys under said pretended law.

The defendants, by their answer, and by their admissions in open court, say that they are the commissioners and treasurer of Summit county, respectively, and that the relator is a resident tax-payer of said Summit county, and that the commissioners, by resolution, awarded to the Cleveland Trust Company, a corporation under the laws of Ohio, the use of the money of said county to the extent of four hundred thousand dollars, for the period of three years; that such award was made pursuant to an act of the General Assembly, passed April 2, 1906, found in 98 O. L., 274-279; that said the Cleveland Trust Company is a corporation, duly organized and existing under the laws of the state of Ohio, having its principal place of busines at No. 1 Euclid avenue, in the city of Cleveland, Cuyahoga county, Ohio; and that said trust company has and had at, and prior to the time of making the bid referred to in the petition, a bank situated in the county of Summit and state of Ohio, to-wit, in the village of Hudson therein; that said bank in said village has a full complement of officers and agents, and there transacts its general banking, trust and savings business,

Defendants further say that the bid so made by the Cleveland Trust Company was the highest and best bid for the use of the funds of said county; and admits the preliminary notice in writing, required by law, was made upon the prosecuting attorney as alleged in the petition. The reply is a general denial, save and except such things as are admissions of the matters set forth in the petition.

The issues growing out of the pleadings, the admissions and waivers made by the parties to this cause in open court, resolve themselves into two propositions:

First. Is said act of the General Assembly providing for county depositaries, as found in 98 O. L., 274-279, unconstitutional by reason of Sections 1 and 2 of Article I of the Constitution of the state of Ohio, and Section 26 of Article II of the Constitution of the state of Ohio.

Section 1 of Article I, commonly spoken of as the Bill of Rights of the Constitution of the state of Ohio, reads as follows:

"All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possession, and protecting property, and seeking and obtaining happiness and safety."

Section 2, Article I, reads as follows:

"All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary;" etc.

Section 26, Article II, reads:

"All laws of a general nature shall have a uniform operation throughout the state;" etc.

The relator claims that the right and privilege of acquiring and possessing property, as defined by Section 1, Article I, and and the right to equal protection and benefit, under favor of Section 2, Article I, are denied to natural persons by the provisions of the so-called county depositary law, which limits those eligible to bid for and receive the county funds to "a bank or banks or trust companies * * * duly incorporated

under the laws of this state or organized under the laws of the United States."

The relator further claims that the reason Section 1 of said depositary law providing, "where the county seat in any county has no bank of the description as defined in Section 1 of this act, that any private bank may be authorized to receive such funds, provided they give security to sufficiently cover such deposit," etc., and that by reason of the fact that a private bank is eligible to bid for and receive such county funds in some counties of the state where no incorporated banks are situated, and private banks in other counties where incorporated banks are situated, are not eligible to bid for and receive the award for such funds, that this would be such a failure of uniform operation in a statute dealing with matters of a general nature as to be violative of said Section 26, Article II, of the Constitution of Ohio.

In addition to the constitutional questions, there is raised the mixed question of law and fact as to whether or not the Cleveland Trust Company, which has its principal place of business located at No. 1 Euclid avenue, Cleveland, Cuyahoga county, Ohio, and a branch bank doing business in Hudson Village, Summit county, Ohio, is situated in Summit county, Ohio, within the provisions of the depositary act.

It is rather surprising to find that while a large number of states have had, for a long term of years, depository laws similar to the Ohio statute in question, there have been no adjudications upon constitutional questions of a like character to those that have been raised in this case; and the fact that such statutes in other states have been so long acquiesced in by the public without questioning their constitutionality in these respects, would certainly lead the court to hesitate and to act with much reluctance in declaring such a statute unconstitutional. The public policy of abundantly protecting the public funds and providing for their earning a fair interest during the period that they may not be required for purposes of disbursement, and furnishing the business public with needed capital for the usual and customary purposes of trade and commerce, are so manifestly wholesome and in the interests of the public

welfare, as to advise judicial sanction unless clearly and manifestly prohibited by constitutional limitations.

The presumption is always in favor of the validity and constitutionality of the law; and it is only when a manifest assumption of authority and a clear incompatability between the Constitution and the law appear, that the judicial power will refuse to execute it. Judge Renney in *C., W. & Z. R. R. Co.* v. *Commissioners of Clinton County,* 1 O. S., 77; and many other Ohio cases to same effect. While this is a mere legal axiom, its foundation, reason and necessity are of interest.

"The Legislature, in the first instance, is to be the judge of its own constitutional powers. Its members act under an oath to support the Constitution, and are in every way under as great a responsibility as judicial officers. Their manifest duty is never to exercise a power of doubtful constitutionality. Doubt, in their case, as in that of the courts, should be conclusive as against all affirmative action. This being their duty, we are bound, in all cases, to presume that they have regarded it; and that they are clearly convinced of their power to pass a law before they put it in the statute book. If a court, in such case, were to annul the law while entertaining doubts upon the subject, it would present the absurdity of one department of the government overturning in doubt what another had established in settled conviction, and to make the dubious constructions of the judiciary outweigh the fixed conclusions of the General Assembly." 1 O. S., 83.

No question is raised that the subject-matter involved in the legislation in question, is not within the legislative power of the General Assembly. The General Assembly's legislative power is almost plenary and absolute. Section 1, Article II of the Constitution of Ohio reads: "The legislative power of this state shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives."

"It will be observed that the provision is not that the legislative power, as conferred in the Constitution, shall be vested in the General Assembly, but that the legislative power of this state shall be vested. That includes all legislative power which the object and purposes of the state government may require, and we must look to other provisions of the Constitution to see how far and to what extent the legislative discretion is qualified or restricted." *Baker* v. *Cincinnati,* 11 O. S., 534-542.

"Such prohibition must either be found in express terms, or be clearly inferable, by necessary implication from the language of the instrument when fairly construed according to its manifest spirit and meaning." *Cass* v. *Dillon*, 2 O. S., 607; *Evans* v. *Dudley*, 1 O. S., 437; *Lohman* v. *McBride*, 15 O. S., 573-592.

Do either of the three sections of the Constitution called in question in this case expressly or by clear inference prohibit the enactment of the statute in question; or, are the terms and provisions of the statute, so far as applicable to the case at bar, merely a matter within legislative discretion?

A county is merely one of the political subdivisions of the state, created only for public purposes, to facilitate and promote the administration of the state government (*Board of Supervisors of Sangamon Co.* v. *City of Springfield*, 63 Ill., 66; 11 Cyc., 65). It is not a public corporation as is a city or village, it is not vested with a single attribute of sovereignty, but is merely a territorial division of the state for purposes of political organization and civil administration in public affairs. 1 O. S., 77.

When the tax-payers of the county have contributed to the county treasury such sums as are lawfully assessed against them, the fund so created has become the property of such county or political subdivision of the state, and the individual tax-payer has lost substantially all right, title and interest in and to said fund, save and except what he may have in order that such fund may be applied only for the purposes for which it was levied and collected, or for such purposes as may be authorized by law in the county treasury, it is the property of the state, or rather of a political subdivision of the state—a county.

Does either Section 1 or Section 2 include within its terms and provisions, either expressly or by necessary implication, the state of Ohio as a unit or any of its political fractions such as a county? A careful reading and consideration of those sections finds the word "men" used in the first section, referring manifestly to natural persons and such artificial persons as private corporations who are similarly situated with respect to the subject-matter under consideration. Section 2 used the word "people" as synonymous with men, and evidently equal in scope

and comprehension, and has substantially the same application. In both sections the term "inalienable rights" and "equal protection and benefit" relates to private, personal, civil or political rights of natural persons only, which by force of legislative enactment and judicial interpretation has been extended to private corporations similarly situated with reference to the subject-matter under consideration. But the court is unable to find any authority or adjudication whatsoever that has undertaken to extend the provisions of these sections to a state or any of its political subdivisions.

The court, therefore, holds that so far as Section 1 and Section 2, Article I of the Bill of Rights, are concerned, that they are in no way violated or infringed upon by the legislative act in question; for the subject-matter of the statute in question is the county funds, the property of the county, a mere *quasi* corporation for governmental purposes, in which natural persons and private corporations have ceased to have any interest as to property, right or title. The court believes that any legislation with reference to the county is purely a matter for legislative discretion as far as these sections of the Constitution are concerned, and though such discretion may involve an unreasonable or arbitrary discrimination against individuals or a certain class of private corporations, such objections would not be fatal upon a constitutional question. Such discriminations should be a matter addressed to the discretion of the legislative body enacting the law.

Numerous decisions have been made, clearly showing the plenary power that the Legislature may exercise in reference to county affairs, county property and county funds. A county, being created by legislative enactment, has only such powers and authority as may be conferred by the Legislature. The Legislature, having power to create, it likewise has the power to dissolve, and the officers of the county, in the administration of their political duties, are guided solely by legislative provisions. This is particularly true as to the collection, custody and disbursement of the public funds. Moreover, it is the well known duty of trial courts, in case of doubt, to sustain and support all legislative enactments, especially where they are in harmony with the best public interest and general welfare.

As to Section 26, Constitution of Ohio, requiring a statute of a general nature to have uniform operation throughout the state, the court finds that there is such uniformity of operation wherever there are like conditions, and that such section is, therefore, not in any wise violated.

As to the Fourteenth Amendment to the Constitution of the United States, the court finds that this amendment is in no way infringed upon, the same reasoning applying as that under Sections 1 and 2 of Article I of the Constitution of Ohio.

The second question is: Is the Cleveland Trust Company, with its principal office and place of banking business located at No. 1 Euclid avenue, Cleveland, Cuyahoga county, Ohio, under the terms, provisions and spirit of the statute in question "situated" in Summit county, Ohio, by virtue of its having a branch office or bank engaged in a general banking business at Hudson Village, Summit county, Ohio.

The language of Section 1 in question is as follows:

"In each county the commissioners thereof shall designate in the manner hereinafter provided, a bank or banks or trust companies situated in such county, and duly incorporated under the laws of this state, or organized under the laws of the United States as a depositary or depositaries of the money of the county, provided that in any county where no such bank or trust company exist, or where such bank or banks neglect to bid as provided for herein, or to comply with all the conditions of this act, the commissioners shall designate any other bank or banks incorporated under the laws of this state or organized under the laws of the United States, located and doing business in this state," etc.

Clearly the Legislature intended by this provision to give the home banks of the county the preference in bidding and in being awarded the county funds. These funds have been taken out of the arteries of the county's trade and business, and it was doubtless thought wise by the Legislature that the depositary should be established in some bank situated in the county, so that these funds might return to these channels of trade and business, for use and service until they should be needed for disbursement for public purposes, and, therefore, it was provided that the depositary should be situated within the county.

The charter of the Cleveland Trust Company designates No. 1 Euclid avenue, Cleveland, Cuyahoga county, Ohio, as its principal place of business. It appears that said trust company has a large number of branch banks, so-called, doing a general banking business situated in various counties adjoining Cuyahoga, one of which is located at Hudson Village, in Summit county, Ohio. The undisputed evidence shows that said bank at Hudson Village has the usual complement of bank officers and employes such as you would expect to find in a small village of about a thousand inhabitants, and that the deposits in cash kept on hand for daily business are about nine or ten thousand dollars. Hudson Village is located some twelve or thirteen miles from Akron, the county seat of Summit county. Under the proposed award to the Cleveland Trust Company, it would receive $400-000 of the funds of Summit county. The evidence further shows that all excess moneys above nine or ten thousand dollars deposited and received at the bank at Hudson Village are reported and forwarded to the Cleveland Trust Company, at Cleveland, or to such other points as the Cleveland office might order and direct. Outside of the usual and ordinary clerical work by the employes at Hudson Village, the administrative and executive work of such bank is conducted at its principal place in Cleveland, which is in daily communication with the Hudson branch.

The diligence of counsel on both sides of this case has failed to find but one case which throws any light upon this question. That case is entitled *The Fremont Butter & Egg Co.* v. *Snyder et al,* 39 Neb., 632 (68 N. W., 149). The facts of that case are substantially as follows: The plaintiff was a corporation organized under the laws of Nebraska for the purpose of buying and selling butter and eggs. Its principal place of business, as fixed by its charter, was in Dodge county, and its chief officer resided there. It had and maintained in Saunders county, a place of business, there exercised its corporate functions and had there employes conducting the business for which it was organized. It was there held that the corporation was situated in Saunders county, and, therefore, under the statute of civil procedure of Nebraska, was suable in Saunders county. In the opinion of the court, it is said that a corporation is situated where

it has and maintains a place of business and servants, employes or agents engaged in conducting and carrying on the business for which it exists.

A very careful search among the reports of our various courts in Ohio has disclosed one case, which throws much light on this question, viz., *The City of Fostoria* v. *Fox*, 60 O. S., 340. In that case the following facts appear:

The city of Fostoria is located on the county line between Seneca county and Hancock county, a part of the city being located in each county, but with its principal place of business and all of its offices situated within Seneca county. Suit was brought in Hancock county by Fox against the city for mandatory injunction, requiring it to remove a dam from a stream of water, a branch of Portage river, the dam being a part of its system of works for supplying water to itself and its citizens; and for damages on the ground that the lands of the plaintiff were thereby wrongfully overflowed and injured. The dam was on the premises owned by the city, but a short distance below the lands of the plaintiff, situated on the stream above. Fox resided in Hancock county, and the property and the dam causing the injuries complained of were located in Hancock county; the summons, however, was issued by the clerk of the court of common pleas of Hancock county, and was served by the sheriff of Seneca county.

The defendant appeared for the purpose only of objecting to the jurisdiction of the court, and moved to quash the summons and set aside the service of summons made upon it, on the ground that Fostoria was a city situated within Seneca county. The trial court overruled the motion and held that it had jurisdiction of the person of the defendant on the service as made. The defendant excepted. Issues were then made up, trial had and judgment entered against the city. It appealed to the circuit court. The same objection was there made to the court's jurisdiction; the objection was overruled, and exception taken and trial had, which resulted in judgment against the city. Error was prosecuted on various assignments to the Supreme Court especially the error that the court erred in overruling its motion to quash the summons and set aside the service made upon it.

The court, in considering Section 5028, Revised Statutes, (now Section 5023), to-wit, "An action other than one of those mentioned in the first four sections of this chapter against a corporation created under the laws of this state, may be brought in the county in which such corporation is situated, or has, or had, its principal office or place of business, or in which any corporation has an office or agent," proceeds to discuss the meaning and scope of the word "situated" in the following portion of the opinion of Judge Minshall:

"But it is also claimed, that where a city is partly within one and partly within another county, it has a situs in each. This we think is not admissible. If this were so, it would be two cities instead of one. It would be quite as consistent with reason to say, that an individual could have two domiciles. The situs of a city is to be determined by the place where its principal seat of municipal government is located."

If the municipal corporation, the city of Fostoria, has but one situs, which is determined by the place where its principal seat of municipal government is located, it would seem under this opinion of the Supreme Court of Ohio, by parity of reason, that a private corporation can likewise have but one situs, and that where its principal seat of corporate government and business administration is located, and there is no contention here but that that place is at No. 1 Euclid avenue, Cleveland, Cuyahoga county, Ohio.

Taking this decision of our own Supreme Court, Cleveland, Cuyahoga county, is its situs for taxation, is its situs for executive management and business administration, it is the situs where its directors meet, where its loans and discounts are determined upon; in short, it is the seat of government. The incorporated bank is not at Hudson—it is in Cleveland; Hudson is only a feeder, a tributary of the main reservoir in Cleveland. The purposes of the act are doubtless, first, to provide a safe place for the funds; second, to prevent a brokering of the funds; third, to keep the money within the county for the use and benefit of its citizens until it shall be needed for the purposes of public disbursement.

The court holds that under all the circumstances of this case, especially the last purpose just set forth, the Cleveland Trust

Company is not such a banking corporation as is situated in this county within the meaning of this act.  Upon the second question, therefore, the court finds the issues wilth the relator, and the temporary restraining order heretofore granted is made perpetual, and the costs of the action are assessed against the defendants.

*Slabaugh & Seiberling*, for plaintiff.

*H. M. Hagelbarger* and *Kline, Tolles & Goff*, for defendants.